NOT DESIGNATED FOR PUBLICATION

No. 126,768

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
DAVID GREGOIRE DELIMONT.

MEMORANDUM OPINION

Appeal from Morris District Court; COURTNEY D. BOEHM, judge. Submitted without oral argument. Opinion filed August 2, 2024. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Kurtis K. Wiard*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GREEN, P.J., GARDNER and PICKERING, JJ.

PER CURIAM:  David Gregoire Delimont appeals the district court's denial of transitional release from his commitment as a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. Delimont argues that the district court erred by finding he did not meet his burden to show probable cause that his mental abnormality or personality disorder had so significantly changed that it would be safe to place him on conditional release. After reviewing the record, we agree with the district court that Delimont has not met his burden and affirm the district court's judgment.

1

*Factual and Procedural Background*

In 1987, United States Army officials court martialed and eventually convicted Delimont of indecent acts or liberties with a child after Delimont sexually assaulted his then 8- or 9-year-old relative. Delimont served five years in federal prison for this crime.

About a month after his release from prison, Delimont reoffended, committing sexually violent offenses against four boys. These victims included two of Delimont's other relatives (ages 8 and 15) and two neighbors (ages 8 and 13). Delimont began serving a 273-month prison sentence for these crimes in 1995. While serving this sentence, Delimont refused to participate in the Sexual Offender Treatment Program and incurred 24 disciplinary reports, including 3 for lewd acts involving males under 25 years old.

Shortly before Delimont's scheduled release from prison in 2014, the State successfully petitioned the district court to have Delimont civilly committed as a sexually violent predator (SVP) under the KSVPA. Following a bench trial on stipulated facts in 2015, the district court found Delimont to be an SVP and committed him to the custody of the Kansas Department for Aging and Disability Services (KDADS) to undergo treatment in the Sexual Predator Treatment Program (SPTP). A panel of this court affirmed that decision on appeal. *In re Care and Treatment of Delimont*, No. 114,495, 2016 WL 3366001 (Kan. App. 2016) (unpublished opinion).

Delimont received his first annual report at KDADS in 2016, which concluded that Delimont remained an SVP. Delimont petitioned the district court to appoint an expert to evaluate him and determine whether he qualified for transitional release. The district court denied the request, and Delimont appealed. Delimont raised only unpreserved constitutional arguments on appeal, claiming that giving the district court discretion to appoint an expert violated due process and equal protection. This court

dismissed the issues and affirmed the district court. *In re Care and Treatment of Delimont*, No. 117,706, 2017 WL 5951523, at *1-2 (Kan. App. 2017) (unpublished opinion).

Delimont also unsuccessfully petitioned for release following his 2017 and 2018 annual reports. The district court dismissed Delimont's appeal from the 2017 decision, and this court affirmed the denial of Delimont's 2018 petition. *In re Care and Treatment of Delimont*, No. 120,242, 2019 WL 2237375, at *1, 6 (Kan. App. 2019) (unpublished opinion).

KDADS completed Delimont's most recent annual examination in 2023, cataloging Delimont's progress from April 2022 to April 2023. The report explained that Delimont continues to suffer from mental abnormality or personality disorder which makes it likely that he "'will engage in repeated acts of sexual violence' (per the DSM 5)." The report concluded that Delimont's condition has not so sufficiently changed that it would be safe for him to be placed in transitional release, "as it is likely he may engage in repeat[ed] acts of sexual violence if placement was to occur at this time."

Delimont again petitioned the district court to appoint an independent examiner and conduct an annual review hearing. The district court held a review hearing at which Delimont appeared through counsel. The district court denied Delimont's petition. It found that Delimont remained on Tier One status and failed to participate in the SPTP. These and other factors refuted Delimont's claim that his mental abnormality or personality disorder had changed significantly, permitting his transitional release.

Delimont timely appeals.

*Analysis*

Delimont's notice of appeal states that he is appealing the denial of his transitional release and the denial of an independent evaluation. But Delimont's brief includes no argument about the independent evaluation, so we consider that issue to be waived or abandoned. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020). Thus we analyze solely Delimont's challenge to the district court's finding that he did not meet his burden to show probable cause that his mental abnormality or personality disorder had so significantly changed that it would be safe to place him on conditional release.

We review the district court's probable cause determination under the KSVPA de novo. *In re Care and Treatment of Burch*, 296 Kan. 215, 223, 291 P.3d 78 (2012). As the person requesting transitional release, Delimont bears the burden to show probable cause that his request should be granted. This burden is satisfied when the evidence is "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [Delimont's] mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release." 296 Kan. at 226. We review the evidence in the light most favorable to the committed person and resolve all conflicting evidence in Delimont's favor. See 296 Kan. at 224.

After an individual is civilly committed as a sexually violent predator, the person has a right to receive an annual review hearing under K.S.A. 59-29a08 to determine whether the individual is ready for transitional release. K.S.A. 2023 Supp. 59-29a08(a) states: "Each person committed under the Kansas sexually violent predator act shall have a current examination of the person's mental condition made once every year." The annual report is forwarded to the district court that committed the person under the Act. K.S.A. 2023 Supp. 59-29a08(b) provides that the "person must file a request for an annual review hearing within 45 days after the date the court files the annual written

4

notice." At the annual review hearing, "the burden of proof shall be upon the person to show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 2023 Supp. 59-29a08(d).

On appeal, the parties primarily renew the arguments that they made in district court. Delimont notes that unlike the previous year, he participated in the underlying annual review. He acknowledges that he is still on the first tier of treatment but notes that he has not been prescribed psychiatric medications, has not been placed on "IPMP status" for more than two years, attended some group treatment, and received an average risk score on his Static-99R assessment. Delimont also claims that he should have been allowed to personally appear at his hearing to deny some facts alleged in his annual report.

Referencing the district court's finding that Delimont showed a "total lack of participation" in the SPTP, the State asserts that because Delimont has refused treatment, he is presumptively unable to prove that he should be released. Here, the State relies on K.S.A. 2023 Supp. 59-29a08(d), which provides that if a detainee "does not participate in the prescribed treatment plan, the person is presumed to be unable to show probable cause to believe the person is safe to be released." See *In re Care and Treatment of Rich*, No. 126,123, 2023 WL 7404344, at *3 (Kan. App. 2023) ("Because Rich made no attempt to rebut this presumption, we can conclude the district court did not err in finding Rich failed to establish probable cause to demonstrate a significant change in his condition and end our inquiry there.").

Although the district court made the "total lack of participation" finding emphasized by the State, it did not rely on the presumption under K.S.A. 2023 Supp. 59-29a08(d) in denying Delimont's claim. Although we decline to apply the presumption for the first time on appeal, we agree with the State that Delimont fails to show probable

5

cause that his condition has significantly changed, as is necessary to allow his request for transitional release. We detail why below.

Delimont's annual report from April 2022 to April 2023 explains that SPTP measures treatment progress in three tiers, and Delimont is still on Tier One—skill acquisition. Tier One seeks to teach "the acquisition of skills necessary to allow him to safely function in more challenging, open society environments, as well as encouraging him to address the individual issues which contributed to his placement at SPTP." The report lists Delimont's current diagnoses as:

- Pedophilic disorder, sexually attracted to males, nonexclusive type;
- Borderline personality disorder with antisocial features;
- Major depressive disorder, single episode, moderate; and
- Alcohol use disorder, moderate, in sustained remission, in a controlled environment.

Despite Delimont's diagnoses, he presented little to no evidence that he participated in treatment for these disorders. Over the reported year, Delimont failed to complete any rational self-analysis reports or fantasy logs and attended only a single individual therapy session. He also failed to enroll in any psycho-educational classes or elective leisure sessions and did not gain employment in the vocational training program. Delimont also sometimes refuses to take his medications, and in some reported events, he responded crassly or inappropriately to reasonable requests to take his medications. Although Delimont argued against certain allegations made in the annual report, he admitted that he "has not participated in the program."

KDADS performed several actuarial tests as a part of Delimont's 2023 annual review. One of these tests scored Delimont in the 86th percentile of the STABLE-2007 test, which assesses change in a detainee's intermediate-term risk status and treatment

needs and predicts recidivism. This means that "out of 100 individuals convicted of a sexual offense, about 85 would have a lower score, about 3 would have the same score, and about 12 would have a higher score."

Delimont also completed a Static-99R assessment, which estimates the probability that a convicted adult male sex offender will reoffend against a child or nonconsenting adult. Delimont's score placed him at "[a]verage [r]isk." Combined with his STABLE-2007 score, however, this assessment score placed Delimont in an "[a]bove [a]verage" risk profile overall. Offenders with this profile "are expected to have roughly twice the rate of recidivism compared to the average individual convicted of a sexually motivated offense." The actuarial testing also concluded that Delimont "continues to exhibit clinically significant problems related to sexual preoccupation and rejection of supervision."

Delimont also participated in a residential interview as part of his review. During the interview, Delimont refused to answer questions about his past behaviors, stating his criminal history was not relevant to the report. He also told the interviewer that he did not "'have any victims'" because he did not "go out and 'snatch'" children, and the people he offended against were either family members or family friends. When asked about situations or places that would put him at risk of reoffending, Delimont responded that he did not know because he did not "'reoffend or offend to begin with. [He] never just picked up a child or victim off of the streets.'" And when asked what upsets him, he said, "'this entire program. It is all lies and [i]gnorance." He also told the interviewer, "'I don't want to do the program, I want to die.'"

So despite the many sexually violent offenses that Delimont committed and the young ages of the children that he committed these offenses against, Delimont denied having any victims. Delimont also downplayed the significance of his criminal acts and suggested that he did not need treatment because he had done nothing wrong. These

beliefs, his disregard for his victims, and his refusal to participate in treatment show that Delimont is not willing or prepared to moderate his thoughts or actions appropriately to allow a safe transitional release.

Finally, we examine Delimont's claim that he should have been allowed to personally appear at the review hearing. That claim is unsupported by legal authority. And Delimont's counsel raised each of the arguments in the district court that Delimont now claims he should have been allowed to raise in person, so Delimont has shown no prejudice. Delimont's counsel argued that, contrary to the facts alleged in the report, Delimont:

- Attended quarterly comprehensive-integrated-treatment meetings,
- Did not possess contraband;
- Did not continue to exhibit clinically significant problems with sexual preoccupation and rejection of supervision;
- Never exhibited sexual misbehavior; and
- Failed to participate in treatment-resistant group only because COVID-19 made it unavailable.

Delimont thus does not convincingly argue that he was precluded from presenting his case in the district court.

*Conclusion*

Viewing the evidence in a light most favorable to Delimont, we find Delimont has not shown probable cause to believe his mental abnormality or personality disorder has so significantly changed that it would be safe to place him on conditional release. We thus affirm the district court's judgment.

8

Affirmed.