NOT DESIGNATED FOR PUBLICATION

No. 127,428

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.M.H. Jr., M.M.H., M.L.H., and D.M.H.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RICHARD MACIAS, judge. Submitted without oral argument. Opinion filed September 27, 2024. Reversed and remanded with directions.

*Laura E. Poschen*, of Law Office of Laura E. Poschen, of Wichita, for appellant natural mother.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before MALONE, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: The natural mother (Mother) timely appeals from the district court's decision to terminate her parental rights to her four children, all under the age of 18. The natural father (Father) is not a party to this appeal. On appeal, Mother raises only one issue—the district court erred in failing to properly comply with the notice requirements under the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901 et seq. After a careful review of the record, we find the notice lacked sufficient information for the tribes to determine if ICWA applied. We reverse and remand for the district court to issue a corrected notice with all the information ICWA requires and to proceed accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2021, the minor children were placed in protective custody due to abandonment. At the time, the children resided with Mother, and Father was incarcerated.

1

Police officers observed then-four-year-old D.M.H. standing alone near an intersection. Shortly thereafter, another individual approached the officers with then-six-year-old M.M.H. and told the officers they were looking for a lost dog. M.M.H. also informed the officers that he and his siblings lived in a trailer with no electricity. Officers took D.M.H. and M.M.H. to the address they were provided and made contact with Mother's boyfriend, who told the officers he had not seen or heard from Mother for approximately 12 hours. He also informed the officers there had been a serious disturbance between him and Mother, and then-nine-year-old D.M.H. Jr. (the eldest of the four siblings) had been present during the incident. Mother was contacted by telephone and returned with D.M.H. Jr.

Based on these reports, the Kansas Department for Children and Families (DCF) became involved in the case and conducted an investigation before taking all four children into protective custody. The State then filed a petition asserting each of the children was a child in need of care (CINC), and the district court adjudicated them as such. After approximately 18 months, the State filed a petition for a finding of unfitness and termination of Mother's parental rights because she had failed to work the reintegration plan. Because Mother's appeal does not challenge the CINC adjudication or the basis for the termination of her parental rights, we decline to detail the allegations and what Mother did or did not do for the benefit of the children.

At the start of the proceedings Mother claimed she and the children were Native American. Mother completed an affidavit and questionnaire of Native American heritage wherein she indicated her father (Maternal Grandfather) was an enrolled member of the Cherokee Nation. Mother was given a genogram to fill out to provide additional identification regarding her heritage and enrollment status, but she never returned it.

The State sent notice to the relevant tribal authorities pursuant to ICWA, which included the limited identifying information Mother provided. However, the notice did

2

not include Maternal Grandfather's or Maternal Grandmother's names/identifying information and did not include Mother's maiden name or any other names she used in the past. The notice stated Mother had not completed the genogram she was provided. Mother claimed she sent an application to the Tribe for a roll card, which she had not received.

In August 2021, the district court held a hearing on the status of the case; Mother did not appear, but her attorney did. The district court noted Mother was told at the temporary custody hearing she was required to attend the present hearing. The district court, based on the information it had at the time, found ICWA did not apply.

In January 2022, the district court held another permanency hearing. Mother failed to attend in person, but her attorney was present. The State offered more correspondence from the Eastern Band of Cherokee Indians (the Eastern Band) and the Cherokee Nation as exhibits, which the district court admitted into evidence. The letter from the Cherokee Nation indicated it had examined its tribal records and, based on the information provided, it was unable to find Mother or the children in its records. Thus, the children were not "Indian Children" within the meaning of ICWA and the Cherokee Nation did not have standing to intervene. Similarly, the letter from the Eastern Band reflected there was no information in its tribal records showing the children were members or eligible to enroll as members. Therefore, the Eastern Band likewise concluded it did not have standing to intervene. Accordingly, the district court found ICWA did not apply.

At the termination hearing in February 2023, Mother stipulated, without objection, she was presently unfit and the evidence provided in the State's motion was a proper basis for a finding of unfitness. After discussing Mother's rights with her, the district court accepted Mother's stipulation and found her unfit under all the statutory factors alleged in the State's motion.

In September 2023, at the continued termination hearing, the State also claimed notice had been sent to all federally recognized Cherokee tribes and the Bureau of Indian Affairs (BIA). Although the State believed the available information it had reflected ICWA did not apply, the State asked the district court to proceed with caution by withholding its ruling so the State could send additional notice with Maternal Grandfather's name to determine if ICWA did, in fact, apply. The children's guardian ad litem agreed with the State's recommendation. Mother's attorney informed the district court Maternal Grandfather died in 2017, so it was impossible for him to appear; thus, it was necessary to provide the Tribes with his name to determine the children's eligibility for enrollment. The district court agreed to hear evidence but withhold its ruling for further information regarding the children's status under ICWA.

During a lunch recess, the State contacted the ICWA eligibility unit of the Cherokee Nation via email and provided Maternal Grandfather's name and date of birth. The Cherokee Nation responded Maternal Grandfather was an enrolled member, but Mother and the children were not; therefore, ICWA did not apply because the children were not (1) enrolled members of the Tribe or (2) biological children of an enrolled member and eligible for enrollment. However, the Cherokee Nation clarified the children were eligible for enrollment, but either they had to be enrolled or Mother had to be enrolled before they could be considered Indian children under ICWA. The State forwarded these emails to the district court and all parties.

Mother, during her closing argument, did not argue how ICWA applied. The district court took the matter under advisement and scheduled another hearing for January 2024 to announce its ruling.

At the outset of the January 2024 hearing, the district court asked the parties if any preliminary issues needed to be addressed before it announced its ruling. Hearing none the district court proceeded with its ruling, stating:

4

- ICWA's application was raised in the termination hearing but upon further investigation, based on current information, ICWA did not apply;

- Mother was still unfit and the evidence did not show her unfitness was likely to change in the foreseeable future given the fact the case had been ongoing for more than two-and-a-half years;

- It was in the best interest of the children to terminate Mother's parental rights.

Additional facts are set forth as necessary.

ANALYSIS

*Standard of Review*

Because Mother's only claim on appeal is that the district court erred in determining ICWA did not apply, we engage in statutory interpretation, which presents a question of law subject to unlimited review. *In re A.J.S.*, 288 Kan. 429, 431, 204 P.3d 543 (2009). To the extent the district court's ICWA determination is dependent on its factual findings, we review those findings for substantial competent evidence. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014) (general standard of review for mixed questions of fact and law).

*Discussion*

Ordinarily, proceedings involving a parent's rights to a child are governed by the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq. However, in situations where a court knows or has reason to know an Indian child is involved, ICWA applies. K.S.A. 38-2203(a). An "'Indian child'" means any unmarried person under the age of 18 who is either (1) an enrolled member of an Indian tribe or (2) is eligible for membership in an Indian tribe and is a biological child of an enrolled member of an

5

Indian tribe. 25 U.S.C. § 1903(4). If the evidence suggests the child may be an Indian child within the meaning of ICWA, notice must be sent to the applicable Indian nation(s) or tribe(s) or to the BIA so an interested nation or tribe may intervene. *In re D.H.*, 54 Kan. App. 2d 486, 502, 401 P.3d 163 (2017). When an Indian child does not live on tribal land, the tribal court has concurrent jurisdiction with the state court over involuntary child custody proceedings. 25 U.S.C. § 1911(b).

Mother specifically argues the district court erred in determining ICWA did not apply because the notice sent by the State was deficient. She points to the notice requirements of 25 C.F.R. § 23.111(d)(1)-(d)(4), which provide in relevant part:

> "(d) Notice must be in clear and understandable language and include the following:
> (1) The child's name, birthdate, and birthplace;
> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents;
> (4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member)."

Mother asserts the notice was deficient as it failed to include information required under 25 C.F.R. § 23.111(d)(2) and (d)(3). Specifically, the notice did not contain the names of the children's maternal grandparents or Mother's maiden name. The only information included in the notice about the children's maternal ancestry was Mother's married name and date of birth. Mother acknowledges, however, the State's petition was attached to the notice and included her full name and maiden name. Still, Mother is generally correct about the lack of information of the children's maternal grandparents, and it is unclear whether the relevant tribes or nations considered Mother's maiden name in making their determinations. In fact, both the Eastern Band and Cherokee Nation's

6

responses explained their determinations were based on the information exactly as provided in the notice, and any incorrect or omitted information or documentation could invalidate their determinations.

To support her argument, Mother relies on *In re D.H.*, wherein the natural mother argued the State's notice "omitted important information—the maiden name, birthdate, and direct lineage of the paternal grandmother." 54 Kan. App. 2d at 501. The panel found her argument persuasive, noting the response from the Cherokee Nation indicated the child was not an Indian child "'based on the information exactly as provided by you. Any incorrect or omitted information could invalidate this determination.'" 54 Kan. App. 2d at 500. The response further stated: "'If you wish to send additional information, please respond in writing with the additional lineage . . . .'" 54 Kan. App. 2d at 500.

The panel noted that "the BIA Guidelines state that '[t]he notice requirement includes providing responses to requests for additional information, where available, in the event that a tribe indicates that such information is necessary to determine whether a child is an Indian child.' BIA Guidelines, Section B.6(l)." 54 Kan. App. 2d at 502-03. Based on the language in the Cherokee Nation's response, the panel concluded "the letter from the Cherokee Nation can be treated as a request for more information." 54 Kan. App. 2d at 503. Accordingly, the panel reversed and remanded so the necessary information could be sent to the Cherokee Nation to make a proper ICWA determination. 54 Kan. App. 2d at 504.

The response from the Cherokee Nation here is very similar to its response in *In re D.H.* In fact, some of the language is identical as it also states its determination was "based on the information exactly as provided by you. Any incorrect or omitted information could invalidate this determination." Further still, the Cherokee Nation's response here stated: "If you wish to send additional information, please respond in writing including the child's name and date of birth so we can reference the correct file."

7

Like *In re D.H.*, this response should have put the State on notice the Cherokee Nation was requesting more information.

Granted, there is some distinction here because the State later contacted the Cherokee Nation by email to provide Maternal Grandfather's identifying information. But the State's email did not contain Mother's full name, including her maiden name. It also did not include any information regarding Maternal Grandmother, who Mother stated had sent in enrollment documents for her when she was a child, i.e., when Mother went by her maiden name. This raises a significant concern because Mother's status as a tribal member was the critical fact to the Cherokee Nation's ICWA determination. There was no dispute the children were not currently enrolled members of the Tribe, but it was also undisputed they were eligible for enrollment. Because this determination was based on Mother's lineage, it naturally follows Mother was likewise eligible for enrollment.

Here, the only impediment to the children's status as Indian children was the Cherokee Nation's determination Mother was not an enrolled member. But it is impossible to determine from the present record what information (or lack thereof) was relied on in concluding Mother was not a member. The Cherokee Nation's response referred to Mother by her correct first name and date of birth; it further identified Mother by three hyphenated last names, one of which was her married name and another Maternal Grandfather's name. But it is unclear from the limited context of the record whether the Cherokee Nation meant the three names had each been investigated separately. Moreover, because there was no information regarding Maternal Grandmother—who purportedly requested a roll card for Mother—it is impossible to determine whether the Cherokee Nation ever received a request for enrollment for Mother under some other name.

Simply put, the record reflects Mother failed to fully cooperate in furnishing her family ancestry to the State. But that does not eliminate the burden placed on the State to

obtain all relevant information to provide it to the tribal authorities for them to make the ICWA determination. See 25 C.F.R. § 23.107(b)(1). Therefore, we remand with directions for the district court to ensure the State sends proper notice to the Cherokee Nation with all the information required under 25 C.F.R. § 23.111(d)—particularly, Mother's full identifying information, including her maiden name and any other name(s) she has used. Only then can it conclusively be determined whether the children are Indian children subject to ICWA.

Because Mother has not appealed the district court's finding of unfitness and best-interests determination to terminate her parental rights, those issues are waived and abandoned. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020). If proper notice is given to the Cherokee Nation and it is determined the children are not Indian children subject to ICWA, the district court's termination of Mother's parental rights need not be set aside, and the district court can simply reaffirm its prior decision. However, if it is determined the children are Indian children, the district court must set aside its termination decision and all further proceedings must be in accordance with ICWA. See *In re D.H.*, 54 Kan. App. 2d at 504.

Reversed and remanded with directions.