NOT DESIGNATED FOR PUBLICATION

No. 123,361

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of S.D.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed April 9, 2021. Affirmed.

*Michael G. Jones*, of Crow & Associates, of Leavenworth, for appellant natural father.

*John R. Kurth*, of Kurth Law Office Inc., P.A., of Atchison, for appellee adoptive father.

Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: This is a stepparent adoption case. The natural father (Father) appeals the district court's termination of his parental rights to his five-year-old daughter S.D. so that the husband (Stepfather) of the child's mother (Mother) could adopt S.D. as his own. The district court terminated Father's parental rights based on Father's failure to assume his parental duties for the two years immediately prior to Stepfather filing this action.

*Factual and Procedural History*

The record of the various proceedings and the testimony at the hearing on Stepfather's adoption petition established the following chronology:

S.D. was born in June 2015 to Mother and Father, who were not married to each other.

1

In December 2015, a paternity action was filed which led to the court's determination in May 2016 that established Father's paternity. The court ordered him to pay child support of $328 per month.

There followed a series of post-determination proceedings regarding matters of parenting time, child support, and related issues.

Effective August 1, 2016, the court reduced Father's child support obligation from $328 per month to $58 per month, according to a later March 2017 order.

On August 2, 2016, the district court held a hearing on custody and parenting time. Father was present in person and with counsel. The court ordered joint custody of S.D. with the parties alternating parenting time week-to-week with Friday afternoon the changeover time. Father was ordered to provide Mother every month with a current urinalysis (UA) drug test result.

On September 29, 2016, Mother served Father's lawyer with interrogatories and a request for production.

In November 2016, an income withholding order was entered for the collection of child support.

In December 2016, Mother and Father entered into an agreement for temporary parenting time. The agreement called for a minor adjustment of the prior alternating week parenting time arrangement. The parties also agreed that Father would continue providing monthly UA test results to Mother.

In June 2017, the court held a hearing on a motion from Mother to modify custody, parenting time, and support. Father appeared in person and with counsel. The court found no material changes of circumstances and ordered Father to continue to provide Mother with monthly UA test results.

In December 2017, Mother and Father were operating under the existing alternating-week parenting time schedule. They made a weekly exchange of S.D. at the police station in Atchison where Mother currently lived. Though somewhat conflicting, later testimony indicated that Father was scheduled to have S.D. during the Christmas holiday but failed to meet Mother at the police station to affect the exchange. Mother later introduced into evidence an exhibit describing a phone call to Mother from Father's current wife, E.C.: "12/24/17 the day of [Father's] pick up I was contacted via phone and have a recording of E.C. stating he [Father] was on drugs and tore up the house. I was also contacted via text from E.C.'s mother who stated similar." Father did not have any parenting time with S.D. after December 2017, other than one brief incident we will describe later. Mother later testified that Father did not send S.D. any presents, cards, or letters after 2017.

On January 5, 2018, Mother moved the court to suspend the current parenting plan in favor of supervised visitation. At the hearing that followed on January 24, 2018, Father appeared by his attorney but not in person. (Father later testified he was gone on a work assignment in Wisconsin at the time.) The motion was presented and argued through statements of counsel. The court suspended Father's parenting time until further order of the court. Before parenting time was to be restored, Father had to submit to and provide Mother with a UA test result and to answer the discovery previously propounded by Mother.

On January 7, 2018, Father began sending an extended series of text messages to Mother about him seeing S.D. The last of these text messages was on August 25, 2019.

3

Mother later testified that she did not respond to any of these text messages because "[t]he courts had already told him what he needed to do. And he tended to be pretty aggressive and assertive when he didn't get his way. And I didn't need to stress myself out anymore." Moreover, as the court later found, Mother "was obeying the court order and was not going to violate the court order by doing something other than obeying what the Court had said and that was that there will be no visitation until these two areas [UAs and outstanding discovery] are complied with."

February14, 2018, is an important date in our analysis. This is two years before the Stepfather filed his petition to terminate Father's parental rights to S.D. and to allow Stepfather to adopt S.D.

On March 8, 2018, Father's counsel withdrew from the original paternity case.

On August 5, 2018, Stepfather married Mother.

On December 6, 2018, Mother and S.D. visited Father's parents in Elwood in order to see S.D.'s grandparents and half-sister, the daughter of Father and his wife, E.C. There had been no plan to meet Father there, but Mother anticipated he would be present. Father was present at this family gathering and had contact with S.D. for approximately 30 minutes. According to Mother's later testimony, Father tried to talk to S.D. but she "didn't really understand who he was." Father took photos of the two children playing. This was the only time Father saw S.D. during the two years before Stepfather's adoption petition was filed. The court later, in its ruling on this matter, characterized this encounter as "incidental contact."

On February 14, 2020, Stepfather filed his petition to terminate Father's parental rights and to adopt S.D. Mother consented to the adoption. The petition alleged that consent of Father was not necessary because he had failed to provide support for Mother

4

for more than two years and that he had not had any contact with S.D. for more than two years prior to this petition being filed.

The final hearing on Stepfather's petition was held on September 10, 2020, via Zoom because of the pandemic shutdown. At the hearing, the court took judicial notice of the earlier paternity action and heard testimony from Stepfather, Mother, and Father.

We have noted earlier in this chronology various portions of Mother's testimony. Father testified that he was not aware of the court's January 24, 2018 order suspending his visitation. He said that he was not present at the hearing when the order was established and that he did not receive a copy of the order from his counsel. According to Father, he remained unaware of the court order until a month before the adoption hearing.

After considering the evidence, the district court held that clear and convincing evidence established that Father failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition for adoption. The court found that Father refused to continue taking UAs as ordered by the court and to obey the court's discovery orders, which resulted in his parenting time being suspended. Father took no action thereafter to change the court's order suspending his parenting time. The court found that Father's testimony was not consistent with court documents in the paternity action. There were multiple hearings when Father was present and knew "very clearly what was going on in terms of visitation, parenting time, child support." Moreover, when Father's parenting time was suspended he took no action to comply with or change the court's order. Father's last visit of any substance with S.D. was in December 2017, and he had only incidental contact in 2018. Accordingly, the court terminated Father's parental rights and granted Stepfather's petition for adoption. In doing so, the court did not base its ruling in any way on any deficiency in Father's child support payments.

5

This appeal followed.

*Standard of Review*

On appeal, Father's sole claim of error is that the evidence was insufficient to support the district court's finding that Father failed or refused to assume his parental duties for two consecutive years immediately preceding the filing of Stepfather's petition.

After reviewing all the evidence in the light favoring Stepfather, the prevailing party, we will uphold the termination of Father's parental rights in this adoption case if the district court's factual findings are supported by clear and convincing evidence. In the course of our analysis we do not reweigh the evidence, pass on the credibility of witnesses, or redetermine factual questions. *In the Matter of the Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* March 1, 2021.

*Analysis*

The termination of a person's parental rights in an adoption case is governed by K.S.A. 2020 Supp. 59-2136. Here, the district court relied on K.S.A. 2020 Supp. 59-2136(h)(1)(G) to terminate Father's parental rights. Under this statutory provision, "the court may order that parental rights be terminated and find the consent or relinquishment unnecessary, upon a finding by clear and convincing evidence . . . [that] the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition."

Father argues that he wanted to continue visiting S.D. during the two years before this action was filed, but he was unable to do so because he did not know the court suspended his visitation and Mother did not return his text messages. We are not persuaded by this claim.

6

Father criticizes Mother for not responding to his text messages. But Mother testified that she did not respond because "[t]he courts had already told him what he needed to do" and Father never did what the court found necessary for Father's parenting time to resume.

Mother had every right to assume that Father was well aware that the court had suspended his parenting time and of what he had to do to restore his parenting time. On January 5, 2018, Mother moved to suspend the current parenting plan in favor of supervised visitation. (The motion is not in the record but is referred to in the district court's order of January 24, 2018.) In response to the motion, Father's counsel appeared on behalf of Father at the motion hearing. The motion was presented to the court on statements of counsel without testimony from the parties. It is inconceivable that Father's counsel would have been able to argue the motion without at least some consultation with his client about this pending motion in order to construct a meaningful argument to the court in opposition to the motion. Nor is it any more conceivable that counsel would not advise Father of the adverse outcome of the hearing or that Father would not have inquired of counsel about how it all came out.

Father was well aware of his ongoing duty to provided monthly UA test results to Mother. That had been an ongoing source of conflict and court proceedings throughout the paternity action. The court's last directive on this duty to provide UA test results was at the hearing on June 6, 2017, which Father attended in person. Likewise, Mother's discovery requests directed to Father had been outstanding since September 29, 2016. The district court did not find credible Father's claim that he was unaware of the court proceedings involving parenting time.

Even if we were to assume that Father was unaware of the court's order suspending parenting time, he failed to exert any significant effort to restore his contact

7

with S.D. Kansas law requires a parent to pursue "the opportunities and options which were available to carry out his duties to the best of his ability." *In the Matter of the Adoption of Baby Boy W.*, 20 Kan. App. 2d 295, 299, 891 P.2d 457 (1994). Father did not do so here.

Father never contacted his lawyer to obtain a copy of the January 24, 2018 order. He did not go to the courthouse to check out the status of the matter with the court clerk. He claims he did three things in an effort to see S.D. (1) He visited with an attorney in St. Joseph, Missouri, but did not retain him because of the amount of the required retainer. He did not seek out any other legal assistance. (2) He sent Mother a series of text messages. He continued sending texts for an extended period of time even though it was apparent that Mother would not respond and that his repeated texting to her was an empty gesture. (3) He testified that he went to the arranged custody exchange spot, the local police station, and waited for Mother to arrive with S.D., which she never did. Father testified he did this every week for a period of two years, apparently expecting that by this constant repetition of the same action a different result somehow would be obtained.

The preservation of Father's important parental relationship with S.D. required more than Father's half-hearted and meager efforts exhibited here. Over the two-year period prior to the filing of this adoption action, Father did not take advantage of the "options and opportunities" available to him to restore his parenting time with S.D.

Father points to the fact that he has paid some child support since it was ordered in 2016. He argues that the fact that he made these payments is evidence that he has not failed or refused to assume his parental duties to S.D. While the payment or nonpayment of child support and a failure to assume parental duties are related, they are not identical. See K.S.A. 2020 Supp. 59-2136(h)(1), (3). In any event the district court did not predicate its ruling on the deficiencies in Father's support payments. Moreover, the fact that Father paid some child support, garnished from his wages, does not change the fact

that he failed to act as a parent for more than two consecutive years prior to the filing of this action. See K.S.A. 2020 Supp. 59-2136(h)(1)(G).

We find substantial clear and convincing evidence, viewed in the light favoring Stepfather, that supports the district court's finding that Father failed or refused to assume his parental duties to S.D. during the two years that immediately preceding the filing of Stepfather's petition.

Affirmed.