NOT DESIGNATED FOR PUBLICATION

No. 124,441

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of C.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; JOAN M. LOWDON, judge. Opinion filed February 25, 2022. Affirmed.

*Chadler E. Colgan*, of Colgan Law Firm, LLC, of Kansas City, for appellant natural mother.

*Ashley Hutton*, assistant county attorney, and *Todd Thompson*, county attorney, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and SCHROEDER, JJ.

PER CURIAM: If a district court finds by clear and convincing evidence that a parent is unfit because of "conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future," it may terminate a parent's parental rights to the child. K.S.A. 2020 Supp. 38-2269(a).

In April 2019, the district court found C.C., age four, to be a child in need of care after he was discovered outside, unattended, several times. The district court ultimately terminated Mother's parental rights, finding that she had made little to no progress on her case plan and that the conduct or conditions causing her to be unfit were unlikely to change in the foreseeable future. Mother timely appeals.

1

C.C. has had a troubled upbringing. When he was just two years old the Department for Children and Families (DCF) received a report that his parents were physically abusing him and not supervising him. A year later, DCF investigated Mother for emotional abuse of C.C. Two months before the State filed this action, C.C. was found alone at a grocery store in Leavenworth, wearing only pajamas and sneakers. This was not the first time C.C. had been found wondering alone outside a place he was staying. In addition, in March 2019, DCF received reports about Mother's and Father's drug addiction and Mother's impending incarceration. When law enforcement took C.C. into protective custody, he was living with Father and Father's fiancée, both of whom were addicted to drugs as evidenced by drug tests. Mother was incarcerated because of a probation violation related to drug use with an order that she enter treatment upon release.

Based on the failure of Mother and Father to keep C.C. safe and supervise his actions, it should come as no surprise that in April 2019, the State petitioned to have C.C. declared a child in need of care. An ex parte order of protective custody was entered and later an order of temporary custody. The district court adjudicated C.C. to be a child in need of care on June 11, 2019. By this time in his young life, C.C.'s behavior was uncontrollable. He would not listen to direction and was cruel to the family dog. By May 2019, Mother was in a drug rehabilitation program and Father was in jail, so C.C. was unable to have any contact with them.

A permanency plan was put in place and KVC Behavioral Healthcare, Inc., (KVC) was responsible for keeping track of Mother's progress toward reaching her permanency plan goals. Mother left her drug rehabilitation program abruptly in June 2019. Since leaving the program, she had provided no UA samples to KVC. Mother was supposed to

provide KVC with proof of residency but had failed to do so. She was also supposed to provide proof that she had attended a parenting class but failed to do so.

A reintegration plan was filed with the court in August 2019. As the months wore on, Mother was not making any progress toward achieving her goals to regain custody of her son. Mother provided four UA tests in February 2020, each of which was positive for marijuana. Mother failed to provide information, as required, related to: whether she had resolved her legal issues, proof that she had completed parenting classes, proof that she was employed, and proof that she had sought individual therapy and followed the recommendations. She did obtain housing and provided proof of doing so. And during this time, C.C.'s behavior gradually improved. The combination of medication and therapy were working well. Despite this, the district court continued to believe that reintegration was a viable goal and continued the case for an update.

By June 2020, Mother had submitted only one negative UA but missed the other five UAs either because she was sick, could not attend the appointment, or could not provide paperwork with her results. Mother had made no significant progress on her other case plan goals.

She had provided no UAs in August 2020. In early September 2020, Mother provided a UA positive for THC and methamphetamine. The district court determined that reintegration was no longer a viable goal and requested that the State move to terminate parental rights or establish a permanent custodianship.

At a November 2020 status hearing, the case manager reported that Mother had submitted no UAs since the last hearing and had stated she wished to relinquish her parental rights. She also reported that C.C. was doing very well in his foster placement, which was providing "'normalcy'" for him. He was no longer having daily outbursts.

3

The State filed a motion for finding of unfitness and termination of parental rights in December 2020. The district court held a hearing on the motion, as it related to Mother, in May 2021. By the time of this final hearing, C.C. was almost seven years old.

The case manager with Cornerstones of Care, who was now assigned to C.C.'s case, explained that Mother was not participating in her case plan tasks. She noted that Mother admitted to using methamphetamine early in 2021. Mother had attended no drug treatment programs. Mother had taken a UA that very week and it was positive for THC. From October 2019 to the date of the hearing in May 2021, Mother was asked to submit to about 65 UAs. She took nine. Of those nine, seven were positive for THC, two were positive for methamphetamine and amphetamines.

During that same time frame, Mother could have had around 75 visits with C.C., had she been compliant with her case plan goals. But Mother had only participated in eight visitations. Also during that time frame, C.C. had continued to flourish in his foster placement. He went from only being able to attend school for 30-45 minutes per week due to behavior problems to attending five days per week, full time.

Mother testified at the hearing that she had a job at Taco Bell for about 30 days and was living in a tent. She said that she had bought a trailer home from a friend but was waiting on her lot application to go through before she could move in. She also testified that she had recently enrolled in a parenting class but had not completed it. She admitted she had started drinking heavily and using methamphetamine in 2017. She testified that she did not view marijuana as a drug because it helped with her anxiety and other mental health issues. Mother acknowledged that at one point she wanted to relinquish her parental rights because she could not take care of C.C. She also acknowledged that at the time of the hearing she remained unable to take care of C.C.

The district court granted the State's motion and terminated Mother's parental rights.

Mother timely appeals.

## ANALYSIS

On appeal, Mother's sole argument is that there was insufficient evidence to support the district court's ruling.

*Our standard of review is clear and convincing evidence.*

To terminate a Mother's parental rights to her child, the court must find by clear and convincing evidence that the Mother is "unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a). On appeal, we review all the evidence in the light most favorable to the State to determine whether the district court's ruling was supported by clear and convincing evidence. We do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

*Kansas statutes outline the factors the court must consider in terminating parental rights.*

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a child in need of care. K.S.A. 2020 Supp. 38-2269(a). The statute lists nonexclusive factors the court must consider in determining unfitness. K.S.A. 2020 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical

5

custody. K.S.A. 2020 Supp. 38-2269(c). Any one of the factors in K.S.A. 2020 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2020 Supp. 38-2269(f).

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2020 Supp. 38-2269(g)(1). In making such a decision, the court must consider the physical, mental, and emotional needs of the child. K.S.A. 2020 Supp. 38-2269(g)(1).

When determining whether a parent's conduct is likely to change in the foreseeable future, the court considers the foreseeable future from the child's perspective because children experience time differently than adults. *In re R.S.*, 50 Kan. App. 2d 1105, 1117, 336 P.3d 903 (2014).

*The district court found that the law provided a presumption of unfitness under these facts.*

Kansas statutes allow a court to presume a parent is unfit if it is established by clear and convincing evidence that the child has been placed outside the child's home for "a cumulative total period of one year or longer and [Mother] ha[d] substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home." K.S.A. 2020 Supp. 38-2271(a)(5). There is no dispute that C.C. had been in an out-of-home placement, under court order for more than a year, and Mother made little progress towards reintegration. As Mother acknowledges in her brief, the burden was then on her to show that she was presently able or fit to care for C.C. or will be so in the foreseeable future. If Mother is unable to establish that she is "presently fit and able to care for the child or that [she] will

6

be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights." K.S.A. 2020 Supp. 38-2271(b).

On appeal, Mother argues that there was insufficient evidence to show that her unfitness was unlikely to change in the foreseeable future. But before addressing that argument, we need to address the individual findings of unfitness that she argues were incorrect.

*Mother used drugs in a manner than made her unable to care for C.C.'s needs.*

Under K.S.A. 2020 Supp. 38-2269(b)(3), a district court can find a parent unfit for the use of intoxicating liquors, narcotics, or dangerous drugs that would render the parent unable to care for the ongoing physical, mental, or emotional needs of the child. Mother does not contest that seven of her nine drug tests were positive for illegal substances. Nor does she contest that she only participated in 9 drug tests when around 65 drug tests were requested. When viewed in a light most favorable to the State, the district court did not err in determining that Mother was unfit because clear and convincing evidence showed her use of intoxicating liquors, narcotics, or dangerous drugs rendered her unable to care for C.C. Her multiple missed drug tests and unwillingness to attend and complete drug rehabilitation demonstrate her unwillingness to make the changes necessary to provide care for C.C.

*Reasonable efforts made by appropriate public or private agencies failed to rehabilitate the family.*

Under K.S.A. 2020 Supp. 38-2269(b)(7), a district court can find a parent unfit if there is a "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." Again, when viewed in a light most favorable to the State, the district court's decision was supported by clear and convincing evidence. Mother had a

case plan that, in part, required that she provide clean UAs. She was largely unable to do so and, as a result, she was unable to visit C.C. She also did not participate in parenting classes or other services offered by KVC or Cornerstones of Care. The district court did not err in finding that the agencies had made reasonable efforts to rehabilitate the family but due to Mother's failure to cooperate with or take advantage of those efforts, reintegration of the family failed.

*Mother failed to adjust her conduct to meet C.C.'s needs.*

The district court, citing K.S.A. 2020 Supp. 38-2269(b)(8), also found that Mother was unfit because there was a lack of effort on her part to adjust her circumstances, conduct, or conditions to meet C.C.'s needs. When viewed in a light most favorable to the State, the district court's decision was supported by clear and convincing evidence. Like above, this factor largely relates to Mother's continued drug use and lack of effort to control her addiction, and her failure to attend parenting classes, obtain and maintain employment or housing, or take advantage of other services. Mother only submitted a handful of UAs throughout the life of the case and most of those UAs were positive for amphetamines, methamphetamine, or THC. She failed to attend parenting classes or obtain housing until the very date of the termination hearing. As the district court put it, "Mother's conduct and condition are not much different today than they were" at the start of the case. The district court's finding was not in error.

*C.C. was out of home placement for 15 of the most recent 22 months, and Mother failed to maintain regular visitation or contact.*

Finally, the district court found that Mother was unfit under K.S.A. 2020 Supp. 38-2269(b)(9), which requires two factors to be present. First, the child must have been in extended out of home placement—15 out of the most recent 22 months starting two months after the child was first removed from the home—and second, one of the four

8

listed factors in K.S.A. 2020 Supp. 38-2269(c) must apply. Mother does not contest that the extended out of home placement applies in this case. Instead, she argues that the second factors found by the district court are not supported by the evidence.

The district court, citing K.S.A. 2020 Supp. 38-2269(c)(2), found that Mother failed to maintain regular visitation, contact, or communication with C.C. or C.C.'s custodian. Mother argues that her 8 visits out of approximately 75 available visits and the Christmas card and gift she sent C.C. were enough to show that she maintained regular visitation, contact, or communication with C.C. But when viewed in a light most favorable to the State, the district court's decision was supported by clear and convincing evidence. Mother's incidental contact with C.C. throughout the life of the case was not sufficient to show that she maintained contact with C.C. or his custodian. See K.S.A. 2020 Supp. 38-2269(c) ("the court may disregard incidental visitations, contacts, communications or contributions").

The district court also found that K.S.A. 2020 Supp. 38-2269(c)(3) applied, which states that the court shall consider a parent's "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." Again, the district court's decision is supported by clear and convincing evidence. Part of Mother's case plan was that she provide clean UAs. She essentially failed to do so. She either skipped most of her UAs, or her samples were positive for illegal drugs. Her failure to provide clean UAs was a large impediment to making progress in the case. The district court also correctly noted that for much of the case, Mother was unemployed, was not consistent with providing proof of appropriate housing, failed to provide documentation of completing a parenting class, did not participate in visitation with C.C., and did not attend and complete a drug treatment program. The district court did not err in finding that K.S.A. 2020 Supp. 38-2269(c)(3) applied.

9

*The district court erred when it found that Mother failed to pay a reasonable portion of the costs of substitute care when she had the ability to do so.*

Finally, Mother also argues that the district court erred when it determined that K.S.A. 2020 Supp. 38-2269(c)(4), which states that the court shall consider the "failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay" because the court ignored the ability to pay portion of the statute. Mother's argument on this point is persuasive. There was little evidence relating to Mother's ability to pay during the life of this case. What evidence was available shows that Mother was largely unemployed and at the time of the hearing was living in a tent. It seems unlikely that Mother would have had the ability to pay any portion of the substitute physical care and maintenance. But that does not change the outcome of this case. The other factors still apply.

*Mother's unfitness is unlikely to change in the foreseeable future.*

The district court found that Mother's unfitness was unlikely to change in the foreseeable future. As stated above, that finding is what Mother focuses most of her argument on. When we view the evidence in a light most favorable to the State, the district court did not err in finding that Mother's conduct or condition was unlikely to change in the foreseeable future. Mother spent most of the life of this case unemployed, without adequate housing, and dodging UAs. She did not provide documentation that she attended and completed required classes. She did not make an effort to remain in contact with C.C. or her case managers. At the time of the hearing, it had been almost two years since the district court had declared C.C. a child in need of care—a significant portion of his young life. He was thriving in his foster placement having advanced in leaps and bounds. Perhaps Mother was sincere at the time of the hearing. She alleged having obtained housing. She believed she could remain drug free. And she believed that she would maintain her employment. But those things were not guarantees and even if they

10

were, reintegration could not occur immediately. This court must view the foreseeable future from the eyes of a child, and here the district court did not err when it determined that Mother's conduct or condition was unlikely to change in the foreseeable future. See *In re R.S.*, 50 Kan. App. 2d at 1117. Courts can consider a parent's past conduct as evidence regarding the reasonable likelihood of any future change in parental fitness. See *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019); *In re Price,* 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). As a result, we find that the district court's conclusion regarding Mother's future unfitness is also supported by clear and convincing evidence.

In sum, the district court did not err when it terminated Mother's parental rights. The district court properly found that she qualified as unfit by reason of conduct or condition which render her unable to care properly for C.C. and that the conduct or condition was unlikely to change in the foreseeable future. See K.S.A. 2020 Supp. 38-2269(a).

*Termination of Mother's parental rights is in the best interests of C.C.*

The district court is also required to determine if termination of parental rights is in the child's best interests. K.S.A. 2020 Supp. 38-2269(g)(1). The district court gives "primary consideration to the physical, mental and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. See 50 Kan. App. 2d at 1116. An appellate court reviews the district court's determination of the child's best interests for abuse of discretion. Here, Mother made minimal efforts to change her lifestyle or even participate in programs designed to help her learn to meet the needs of her child, and C.C. has thrived in foster care placement. The district court did not abuse its discretion in finding that termination of Mother's parental rights was in C.C.'s best interests.

11

Affirmed.