NOT DESIGNATED FOR PUBLICATION

No. 128,049

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of G.I. and R.I., Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JANE A. WILSON, judge. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed.

*J. Zachary Anthony*, of Kansas City, for appellant natural mother.

*Garett C. Relph*, deputy district attorney, and *Marc A. Dupree Sr.*, district attorney, for appellee.

Before MALONE, P.J., BRUNS and CLINE, JJ.

PER CURIAM: N.B. (Mother) appeals the district court's termination of her parental rights to her children, G.I. (born in 2020) and R.I. (born in 2021), alleging insufficient evidence and abuse of discretion. Finding clear and convincing evidence supports the district court's order and no abuse of discretion, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, the Kansas Department for Children and Families (DCF) received a report that a stranger found one-year-old R.I. wandering outside alone. DCF investigated the report and spoke to Mother and J.I. (Father) a few days after the incident. Mother and Father revealed financial and other family concerns. They explained that the paternal grandfather, whom the family lived with around that time, died the night before DCF arrived. Mother and Father had also separated three weeks earlier. Mother moved out of

1

the home after the separation, and Father claimed that he had not seen her for those three weeks until DCF arrived. When asked about Mother's black eyes, Mother and Father denied any domestic abuse. But Mother later accused Father of often hitting her.

In July 2022, the State filed children in need of care (CINC) petitions for Mother and Father's two children (R.I. and G.I.) and a third child that Father had with a different mother. The petitions alleged that reasonable efforts were provided to the family but failed to prevent the removal of the children from their home and an emergency existed requiring out-of-home placement. As support, the petitions explained in part that while investigating the incident with R.I., DCF learned that Father took primary care of the three children. However, he exhibited concerning behavior which indicated possible drug use, an inability to properly supervise the children, lack of suitable housing, and child neglect. Mother had been arrested recently and placed in jail. When DCF contacted her at the jail, she admitted that she had been using oxycodone and fentanyl regularly. DCF also received reports accusing Mother of drug abuse, medical neglect of G.I., and physical neglect of G.I., R.I., and her stepchild.

The district court entered emergency orders granting the State protective and temporary custody of the children. In August 2022, Mother entered no-contest statements stipulating that R.I. and G.I. were children in need of care. The district court adjudicated R.I. and G.I. accordingly but found reintegration was a viable goal. The district court thus ordered Mother and Father to complete several reintegration tasks. In part, these included obtaining stable income and housing and completing several assessments for family, substance abuse, domestic violence, and mental health issues. The district court granted Cornerstones of Care discretion in determining the parents' visitation, which provided Mother and Father with the option to attend weekly, supervised visits.

The district court held review hearings in October 2022 and January 2023 and a permanency hearing in April 2023. Mother did not appear at either of the review

hearings. She appeared through counsel at the permanency hearing. Cornerstones of Care filed reports for these hearings, which showed Mother did not visit the children before or after her incarceration. She also completed none of the other court ordered tasks.

In May 2023, the State filed a motion for findings of unfitness and termination of Mother's and Father's parental rights. Relevant here, the motion alleged that Mother was incarcerated and had completed none of her reintegration tasks. She also had several criminal charges pending in two cases in Johnson County, including:

- Two counts of battery against a correction officer (severity levels 5 and 7 person felonies);
- Aggravated battery (severity level 6 person felony);
- Unlawful tampering with an electronic monitor (severity level 8 nonperson felony);
- Misdemeanor criminal damage; and
- Misdemeanor theft.

The district court granted several continuances, but the State's motion eventually proceeded to an evidentiary hearing on February 12, 2024.

The State presented testimony from three witnesses—Court Services Officer Ramona MacDougall and two case manager supervisors Kendra Duncan and Sandra Hannah. These witnesses testified that Mother completed zero case plan tasks. They also explained that Mother was incarcerated throughout most of the underlying CINC proceedings, which prevented Mother from completing most tasks. Hannah specified that at times, the jail did not allow Mother to take calls or have visitors when Cornerstones of Care workers tried to contact her. MacDougall, however, explained that Mother was not in custody from August 2022 to November 2022 and still failed to complete any tasks or contact her case manager during that time. In fact, Mother disappeared during this time,

and MacDougall did not know where she was until she was picked up by law enforcement again. Throughout the year-and-a-half time frame that this case proceeded in the district court, Mother never saw G.I. or R.I.

Several of the attempts that Cornerstones of Care made to contact Mother went unanswered. Even so, MacDougall and Duncan agreed on cross-examination that Mother had some correspondence with her assigned case workers, by mail, in-person, and over Zoom. Mother also sent a letter requesting visitation with R.I. and G.I. Duncan testified that Mother's Cornerstones of Care case manager tried to set up Zoom visits for Mother through the jail following Mother's request. Duncan did not have firsthand knowledge regarding the exact amount of effort given toward getting these visits set up but explained that the jail ultimately prevented the visits from ever occurring. As for specific resources offered to Mother during her incarceration, MacDougall provided Mother with information for online parenting classes and told her to reach out to Cornerstones of Care for more resources.

In her testimony, Hannah also discussed the relationship between Mother's pending criminal charges and the possibility of a foreseeable change in Mother's circumstances. Hannah explained that according to jail personnel, it was unlikely that Mother would be able to bond out of jail. Hannah did not provide a specific reason for this, but the prosecutor revealed during his redirect examination of Hannah that the lowest amount set as bond in Mother's pending cases was $20,000. Hannah also explained that even if Mother was released, it was unlikely that Mother could complete the necessary tasks to show reintegration was viable. Finally, Hannah surmised that given the children's ages, the time the children were in out-of-home placement, and the unlikeliness that Mother's circumstances would change in the foreseeable future, reintegration was not a viable goal. Hannah also believed that termination was in the children's best interests.

4

The district court announced its decision before closing the hearing, granting the State's motion to terminate Mother's parental rights. The district court's written order listed the specific statutory factors that the district court relied on in finding Mother unfit: K.S.A. 38-2269(b)(8) (lack of effort to adjust parent's circumstances, conduct, or conditions to meet the needs of the child); K.S.A. 38-2269(c)(2) (failure to maintain regular visitation, contact, or communication with the child or with the custodian of the child); and K.S.A. 38-2269(c)(3) (failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home). The district judge noted that Mother completed none of her case plan tasks. She acknowledged that some of this failure could be attributed to things somewhat out of Mother's control during her incarceration but highlighted that Mother also completed no tasks when she was not in custody. The district court found that this past conduct indicated that even if Mother was granted an immediate release, she would still not complete the necessary tasks within a reasonable time. And the district court noted the children's ages and the amount of time that they spent in out-of-home placement. Based on these factual findings, the district court determined that Mother was unfit, her unfitness was unlikely to change in the foreseeable future, and termination of Mother's parental rights was in R.I.'s and G.I.'s best interests.

Mother timely appeals.

REVIEW OF MOTHER'S APPELLATE CHALLENGE

Mother challenges the district court's ruling as unsupported by sufficient evidence. She challenges each of the district court's unfitness, foreseeable future, and best interests findings. She argues that the evidence at the hearing and the district court's reasoning for finding her unfit related only to her incarceration. She also notes that by the date of the termination hearing, she had not been convicted of any of the charges against her and still

5

had a possibility of bonding out of jail. Based on this, she claims the evidence failed to show that her unfitness was unlikely to change in the foreseeable future.

*Standard of Review and Basic Legal Principles*

Parents who have undertaken their responsibilities to raise children have a constitutional right under the federal and state Constitutions to continue to raise those children. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Adoption of C.L.*, 308 Kan. 1268, 1279, 427 P.3d 951 (2018). To sever this right, the State must first render an adjudication that the child is in need of care and then establish by clear and convincing evidence that the parent is "unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a); see *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The State bears the burden to prove both that the parent is unfit at the time of the request to terminate parental rights and that the unfitness is unlikely to change in the foreseeable future. *In re L.D.B.*, 20 Kan. App. 2d 643, 646, 891 P.2d 468 (1995); see K.S.A. 38-2269(a).

The statute lists nine nonexclusive factors the district court shall consider in determining unfitness. K.S.A. 38-2269(b). The district court must also consider a separate list of four nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

Once a court finds a parent unfit, it must then consider whether termination of parental rights is in the best interests of the child. K.S.A. 38-2269(g)(1). In its deliberation, the court must give primary consideration to the physical, mental, and emotional health of the child. If the physical, mental, or emotional needs of the child

6

would best be served by termination, the court must so order. K.S.A. 38-2269(g)(1). While the district court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination is made on a preponderance of the evidence. "This is because the analysis of a parent's unfitness determines the constitutional question of whether a parent's rights *can* be terminated, and the analysis of the child's best interests determines whether a parent's rights *should* be terminated." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021).

On appeal, we must be convinced, after reviewing all the evidence in the light most favorable to the prevailing party, the district court's fact-findings are highly probable, i.e., supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

Appellate courts review the best-interests determination for abuse of discretion because the district court is in a better position to view the complexities of the situation. The district court abuses its discretion if no reasonable person would agree with the court or the court made a factual or legal error. *In re E.L.*, 61 Kan. App. 2d at 330.

*Unfitness*

Unfitness has been generally defined as "'unsuitable, incompetent or not adapted for a particular use of service.'" *In re T.H.*, 60 Kan. App. 2d 536, 547, 494 P.3d 851 (2021) (quoting *In re Armentrout*, 207 Kan. 366, 371-72, 485 P.2d 183 [1971]). Mother claims that the State's evidence did not establish unfitness under this standard. Again, she argues that the district court improperly based its finding of unfitness on her incarceration. Mother does not support her argument with any pertinent authority or compare the facts presented to those considered in previous appeals. Yet parties who have raised somewhat similar claims generally rely on *In re T.H.*, 60 Kan. App. 2d 536.

In *In re T.H.*, a panel of this court reversed a district court's termination order where the district court relied on the parent's incarceration in finding the parent unfit. The panel explained that "incarceration does not necessarily result in an automatic and exclusive basis for an unfitness finding." 60 Kan. App. 2d at 548. In other words, incarceration does not—in and of itself—justify a finding of unfitness. Incarceration is simply one of the many factors that may be considered in determining whether a parent is unfit. 60 Kan. App. 2d at 548.

The district court considered Mother's incarceration in making its decision here but did not find Mother unfit on this basis alone. The district court explained that Mother chose to make "no effort to complete these court orders even when free to do so." And although she was allowed visitation before her arrest, she likewise chose to not participate.

Additionally, the parent in *In re T.H.* provided financial support and made other efforts to maintain his relationship with his child throughout his incarceration. He also tried to have his child reside with him before he was incarcerated. And importantly, the State presented no evidence showing the parent's relationship with his child had significantly deteriorated as a result of the parent's incarceration. 60 Kan. App. 2d at 551-53.

Mother did not make any such effort here. When DCF began this case, Mother had not lived in the same home as the children for the previous few weeks. Father also said that Mother had not contacted the family during that time. This left Father alone to care for the children, who failed to appropriate supervise and otherwise care for G.I. and R.I. Mother also made zero efforts toward completing any reintegration tasks for the first several months after the district court's adjudication of the children as children in need of care. And as the district court highlighted, Mother was not in custody at this time. The

record also lacks any evidence suggesting Mother was wrongly arrested or that someone other than Mother deserved blame for her incarceration.

Mother does not convincingly challenge the district court's finding of unfitness, and we are persuaded that a rational fact-finder could have found it highly probable the circumstances support the finding. Cf. *In re B.R.*, No. 126,152, 2023 WL 4675771, at *5-6 (Kan. App. 2023) (unpublished opinion) (distinguishing *In re T.H.* and finding sufficient evidence where father claimed his incarceration prevented completion of reintegration tasks).

*Foreseeable Future*

The crux of Mother's foreseeable future argument is that she had the potential to bond out of jail and be acquitted of the charges against her. But when making this determination courts may look to the parent's past conduct as an indicator of future behavior. *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019); *In re K.L.B.*, 56 Kan. App. 2d 429, 447, 431 P.3d 883 (2018). The district court properly did so here by finding Mother's behavior before her incarceration reflected an unlikelihood that she would make reasonable efforts toward reintegration even if she was immediately released from custody.

Also, the foreseeable future must be examined from the child's perspective. Important here and often emphasized, children and adults have different perceptions of time. A month or a year seems considerably longer for a child than it would for an adult. And children have a right to permanency within a time frame reasonable to them. *In re M.S.*, 56 Kan. App. 2d at 1263-64. After considering these principles, the district court rightly determined that G.I. and R.I. needed permanency by the time of the termination hearing. They were only one and two years old when this case started and spent over a year and half in out-of-home placement.

The evidence clearly and convincingly supports these findings, which in turn provide proper support for the district court's conclusions that Mother's unfitness was unlikely to change in the foreseeable future. We thus find no error in this regard. We, however, will still briefly address the more specific argument that Mother raises here.

Again, the State's evidence showed that it was unlikely that Mother would be released from jail. Mother also had several criminal charges pending. And she had admitted to DCF workers at the beginning of these proceedings that she was on probation before her arrest. The record thus suggests that Mother would at least remain incarcerated until after her trials and faced additional jail or prison time if convicted of any of the offenses. Still, the State did not present specific evidence about Mother's trial dates or the possibility that Mother would be found guilty of any of her alleged offenses.

But we do not agree that the district court necessarily needed evidence showing Mother would not be released from custody within a certain time frame to properly rule on the State's motion to terminate her parental rights. Also, G.I. and R.I. already experienced a significant amount of time in out-of-home care and at their young ages, so even a relatively short amount of additional jail time could have caused them additional harm.

*Best Interests*

Mother's last appellate argument summarily states that termination was not in G.I.'s and R.I.'s best interests. We review the district court's best-interests determination for abuse of discretion, which Mother fails to establish. Mother does not allege legal or factual error, and we are not convinced no reasonable person would agree with the court's decision. See *In re E.L.*, 61 Kan. App. 2d at 330. So we must affirm.

CONCLUSION

Viewing the record on appeal in the light most favorable to the State as the prevailing party, we find clear and convincing evidence to support the district court's finding that Mother is unfit because of conduct or condition which renders her unable to properly provide care for G.I. and R.I. Likewise, we find clear and convincing evidence to support the district court's finding that the conduct or condition that makes Mother unfit to properly provide care for G.I. and R.I. is unlikely to change in the foreseeable future when viewed from the perspective of the children. Finally, we find that the district court did not abuse its discretion in ruling that termination of Mother's parental rights was in G.I.'s and R.I.'s best interests. We thus affirm the district court's order terminating Mother's parental rights.

Affirmed.