NOT DESIGNATED FOR PUBLICATION

No. 128,608

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of H.H.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RICHARD MACIAS, judge. Submitted without oral argument. Opinion filed November 21, 2025. Affirmed.

*Grant A. Brazill*, of Morris Laing Law Firm, of Wichita, for appellant natural father.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and PICKERING, JJ.

PER CURIAM:  This case concerns the termination of Father's parental rights. He appeals the district court's denial of his motion for a continuance and the order terminating his parental rights to his minor child, H.H. After a thorough review of the record and briefs, we find no error and affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

On May 2, 2022, the Department for Children and Families (DCF) took temporary custody of 7-year-old H.H. He was living with his paternal aunt in a motel. At that time, Father was in prison, and Mother's location was unknown. DCF sought temporary custody because of the parents' criminal history, current incarceration, and safety concerns—specifically, a homicide happened at the residence while H.H. was there.

1

Douglas County Citizens Committee on Alcoholism (DCCCA) services had been working with the family.

The next day, the State filed a CINC petition alleging that Father failed to provide a safe and stable living environment and relied on others to care for H.H. The petition stated that H.H. was present when a homicide occurred at his caregiver's home. It also claimed that Father lacked proper judgment regarding H.H.'s well-being and was incarcerated for aggravated child endangerment with H.H. as the victim.

Father appeared via Zoom with appointed counsel and waived his right to a temporary custody hearing. The court ordered H.H. to remain in DCF custody with discretion to place H.H. with a parent upon 10 days' notice to all parties.

At the adjudication and disposition hearing, Father appeared via Zoom with counsel and did not contest the facts as alleged in the petition. The court adjudicated H.H. a CINC, continued his DCF custody, and authorized Zoom visits between Father and H.H.

After several permanency hearings over the next year, the court determined that progress toward reintegration was inadequate and that reintegration was no longer feasible, ordering the State to file a termination motion within 30 days.

The State moved for a finding of unfitness and termination of parental rights about a month later, alleging Father was unfit under K.S.A. 38-2269(b)(3), (b)(4), (b)(7), (b)(8), (c)(2), and (c)(3). Approximately ten months later, in June 2024, the court terminated Father's parental rights. Father timely appeals.

Additional facts are discussed as necessary.

ANALYSIS

1. *The district court did not abuse its discretion by denying Father's motion for continuance to obtain new counsel.*

*We first review the facts related to Father's continuance request.*

At the evidentiary hearing regarding termination of both Mother's and Father's parental rights, Mother—who appeared in custody with her attorney via Zoom—sought a continuance. Father—who was also appearing by Zoom from jail—joined in that request through counsel. Father had initially been on the Zoom call but had "discontinued" it by the time the district judge appeared on the call. Counsel advised that Father wanted a continuance to get new counsel and moreover, he did not believe his rights should be terminated. In that regard, he did not give counsel permission to accept any proffers of evidence on his behalf. Father further denied receiving any communication his counsel had sent him. Father's counsel indicated they would simply join in Mother's continuance request, and beyond that counsel did not know what the court wanted to do with regards to appointment of new counsel.

Because Father "joined" in Mother's continuance request, we also examine the reason for her request, even though the termination of her parental rights is not before us.

Mother stated she wanted a continuance so that a placement evaluation could be performed regarding her mother, H.H.'s grandmother, who lived in Oklahoma. In addition, her counsel stated that the pending criminal charges against Mother were stayed pending a competency evaluation and he doubted that Mother was competent to assist in his advocacy of her.

The State objected to any continuance, noting that the case was two years old, both parents were in custody, there had been no progress toward reintegration even though there had been periods when they were not in custody, and H.H. was living with a kinship placement that was an adoptive resource. The State had no objection to looking at maternal grandmother as a potential placement but did not believe the evidentiary hearing needed to be continued to do that. The State also presented a copy of Mother's competency evaluation, which confirmed she was competent.

The guardian ad litem (GAL) objected to a continuance, noting that Mother had advised at a prior hearing that she would be in jail for "six plus years." She noted that at the last hearing Mother had requested placement of H.H. with an aunt, and Mother was now suggesting a grandmother. As did the State, the GAL argued that placement was not going to be an issue in the termination hearing so it would be no reason to continue the case. She also objected to new counsel being appointed for Father.

The district court then asked the parties to explain how a continuance would be in the best interests of the child, not the parents. Both Father and Mother essentially argued that keeping children in the home of biological parents is always the best option and they should have a chance to pursue that.

The court agreed that placement with a fit parent is always the best option, but the fitness of Mother and Father was the key issue in the case. The court noted that the parents had made no progress in two years and were presently both incarcerated. As to replacement of Father's counsel, the court found that Father had voluntarily decided not to participate in the hearing, and the court could not determine whether counsel should be removed and new counsel appointed unless Father was willing to engage with the court. Father's counsel was given a recess to recontact the jail and try to get Father to come back and participate in the hearing. Father refused. The court denied the continuance, holding:

"[Y]ou can't avoid your responsibility of consequences by just trying to hide out or avoid it. So the request is denied."

The district judge noted that Father's counsel was competent and should proceed to represent Father. Counsel did so with Father in absentia and required presentation of evidence from the State. Father now claims: "The district court abused its discretion by declining to continue the termination trial in order to inquire about Father's desires regarding his representation."

*Our standard of review is abuse of discretion.*

Appellate courts review denials of continuance requests for abuse of discretion. *In re J.A.H.*, 285 Kan. 375, 384-85, 172 P.3d 1 (2007). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). Father has the burden of showing abuse of discretion. 319 Kan. at 400.

That said, Kansas law imposes heightened requirements for continuances in CINC proceedings. K.S.A. 38-2246 requires "good cause" for any continuance, mandating that "[a]ll proceedings under this code shall be disposed of without unnecessary delay." After a termination motion is filed, K.S.A. 38-2267(a) states: "A continuance shall be granted only if the court finds it is in the best interests of the child."

*Once counsel is appointed there is a presumption of continued representation unless relieved for good cause.*

The framework governing counsel in CINC proceedings differs fundamentally from criminal cases. While criminal defendants have a Sixth Amendment right to counsel that generally does not guarantee them the ability to choose a different appointed attorney solely because they are dissatisfied, CINC proceedings operate under a fundamentally

5

different statutory structure. See K.S.A. 38-2205; *State v. Waterman*, 63 Kan. App. 2d 799, 824, 540 P.3d 378 (2023).

In CINC cases, the right to counsel comes from K.S.A. 38-2205, rather than a constitutional mandate. Under the statute, if "a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent." K.S.A. 38-2205(b)(1). Once counsel is appointed, there is a presumption of continuous representation. Appointed counsel "shall continue to represent the client at all subsequent hearings in proceedings under this code, including any appellate proceedings, unless relieved by the court upon a showing of good cause or upon transfer of venue." K.S.A. 38-2205(d). This provision requires establishing "good cause" before permitting withdrawal or substitution of counsel. K.S.A. 38-2205(d).

Father does not argue that the court's denial was an error of fact or law. He focuses his argument on the reasonableness of the court's decision. Yet Father made it impossible for the court to consider whether the case should be continued for new counsel. Father voluntarily disconnected from the Zoom hearing after expressing his desire for new counsel. The district court took a short recess specifically to facilitate Father's return. The detention personnel at Butler County Adult Detention Facility, where Father was being held on a federal hold, asked Father "multiple times" to rejoin; he declined, saying he was "confused as to why [the court] would want him back on, but he didn't want—he didn't want to get back on."

Moreover, Father never established any record of dissatisfaction with his counsel before the morning of the termination hearing. See *In re B.H.*, 64 Kan. App. 2d 480, Syl. ¶ 5, 550 P.3d 1274 (2024) ("In determining whether a court should appoint new counsel in a CINC proceeding, an indigent parent must show justifiable dissatisfaction with his or her appointed counsel."). Father's counsel had represented him since May 2022, with no prior hint of discord. Father's attorney stated Father wanted new counsel and a

continuance, disagreed with proceeding to trial, and did not want to relinquish his parental rights. Father's attorney explained to the district court that Father did not provide clear instructions regarding whether to object to proceeding by proffer. So a full evidentiary hearing was warranted. After inquiry by the district court, his counsel stated, "I am prepared for trial" and continued to advocate throughout the hearing.

The State objected to a continuance, noting that the case was two years old and that the parents had made no progress toward completing the court orders. The State also argued that both parents were currently incarcerated. Although Father was in custody at the time of the hearing, he had been out of custody for a significant period during the pendency of the case. During that time, he did not complete court orders. The State emphasized that its stance on termination would stay the same even if Father were released immediately.

The GAL objected to the continuance, stating it was not in H.H.'s best interests. The GAL also opposed counsel's request to withdraw, noting that Father had voluntarily left the Zoom hearing.

When asked how a continuance would serve H.H.'s best interests, Father's attorney offered only that generally courts recognize that children "have better outcomes" when they are in the home with their biological parents. The court found that a continuance would not help determine parental fitness, noting Father's current incarceration and that the termination motion had been pending for almost a year. The court denied the request for new counsel, stating it would need to hear from Father directly and noting Father had voluntarily discontinued the Zoom call.

After a short recess to ascertain Father's willingness to participate, the court noted that a deputy had asked Father multiple times if he wanted to return, and Father stated he did not want to participate. The court denied Father's motion for a continuance and his

7

request for new counsel. The court proceeded without Father, finding that counsel was ready for trial and willing to represent his interests. Counsel cross-examined witnesses, argued, and proffered Father's position.

Father has failed to meet his burden to prove to us that the court's actions were unreasonable. The district court needed more information from Father to rule on his motion for a continuance to get a new attorney, and Father refused to provide it. Father fails to establish how refusing to rule on a motion that Father did not argue adequately before the court is unreasonable. There was no error.

2. *The district court did not abuse its discretion by finding that Father's parental rights should be terminated.*

H.H. was adjudicated a child in need of care on June 24, 2022. Father does not challenge this adjudication.

Once a child has been adjudicated to be a child in need of care, the district court may terminate parental rights only if it "finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). The plain language of the statute establishes a two-part test that must be met for the district court, in its discretion, to terminate parental rights. First, the court must find clear and convincing evidence that a parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child. Second, if the court makes such a finding, the court then must find clear and convincing evidence that the conduct or condition rendering the parent unable to care properly for a child is unlikely to change in the foreseeable future.

When reviewing a district court's unfitness and foreseeability determinations, the appellate court considers whether, after review of the entire record, viewing all evidence in the light most favorable to the State, a rational fact-finder could have found the determination highly probable—i.e., by clear and convincing evidence. See *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 4, 705-06, 187 P.3d 594 (2008). Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

*The district court's decision regarding Father's unfitness was supported by clear and convincing evidence.*

The statute specifies nonexclusive factors the court shall consider when determining unfitness. K.S.A. 38-2269(b). When a child is not in the parents' physical custody, the court must also consider a separate list of nonexclusive factors. K.S.A. 38-2269(c). Any one of these factors may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

Father argues that the district court's findings of unfitness lack support by clear and convincing evidence.

The district court issued a written ruling, finding clear and convincing evidence that Father was unfit due to conduct or condition unlikely to change in the foreseeable future. The court relied on K.S.A. 38-2269(b)(3), (b)(7), (b)(8), (c)(2), and (c)(3). We will examine the evidence to support each finding.

*Use of alcohol or controlled substances—K.S.A. 38-2269(b)(3)*

Father argues the State failed to prove his substance abuse rendered him unfit. The evidence demonstrates otherwise.

9

The district court found clear and convincing evidence of Father's ongoing substance abuse from multiple sources. Father's parole officer reported positive tests for methamphetamine and marijuana on May 30, 2023. Father himself admitted using THC on March 29, 2023, and acknowledged daily marijuana use afterward. This substance use took place while Father was under investigation for selling large quantities of fentanyl pills—an investigation that culminated in his federal arrest on distribution charges.

Father's pattern of evading accountability further demonstrated his unfitness under this factor. During his 13 months of freedom between incarcerations, Father systematically avoided drug testing requests. He failed to comply with 50 requested drug tests overall, including 17 specific requests between November 1, 2022, and August 9, 2023. He has been incarcerated since November 2023.

The district court concluded that a parent cannot avoid drug testing requests and then claim the State lacks sufficient evidence of continued substance abuse. Considering the totality of evidence—positive drug tests, admitted daily marijuana use, federal fentanyl charges, and complete testing noncompliance—the court determined that Father's substance abuse issues were of such duration and severity that they rendered him unable to care for H.H.'s ongoing physical, mental, and emotional needs. Clear and convincing evidence supports this conclusion.

*Failure of reasonable efforts to rehabilitate the family—K.S.A. 38-2269(b)(7)*

Father argues that the State failed to prove reasonable efforts because the services offered were unreasonable given his incarceration. This argument overlooks that Father was not incarcerated for 13 months, during which he could have engaged with services but chose not to do so.

10

The legal standard for reasonable efforts requires providing assistance that is appropriate for the context without demanding Herculean efforts from agencies. The statutory requirement ensures parents have opportunities to succeed while expecting their reciprocal effort. Agencies are not required to pursue fruitless attempts to engage parents who show unwillingness to participate. The parents must also exert some effort. See *In re S.H.*, No. 126,533, 2023 WL 9016352, at *5 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. 1086 (2024).

Here the evidence shows that DCF and Saint Francis Ministries (SFM) made reasonable efforts to help Father stabilize his situation, but Father showed little effort to adjust or improve his situation following adjudication. Taylor Kern, a permanency specialist with SFM, testified that she met with Father on December 1, 2022, and gave him the case plan, court orders, and a detailed resource guide. Father was not incarcerated from October 25, 2022, until November 3, 2023—during which services were still available. SFM created two achievement plans to help Father make progress. Yet the record shows "no tasks have been initiated by Father."

It was Father's own choices, not agency failures, that prevented his family's rehabilitation. The district court found that Father never directly cared for H.H., attended scheduled visits irregularly, and kept committing crimes, which led to repeated detention and incarceration. The district court, recognizing the agencies' efforts, properly concluded that they made reasonable efforts to comply with the regulations. The court acknowledged that agencies cannot compel an unwilling parent to participate in rehabilitation. Father's freedom between incarcerations provided enough opportunity to show a commitment to reunification. His complete lack of engagement with any services, combined with ongoing criminal activity that resulted in incarceration, indicated that further efforts would be pointless. Clear and convincing evidence supported the court's finding under K.S.A. 38-2269(b)(7).

11

*Lack of effort to adjust circumstances, conduct, or conditions—K.S.A. 38-2269(b)(8)*

Father showed no effort to adjust his circumstances to allow him to care for H.H. Instead, he continued to engage in criminal behavior leading to repeated detention and incarceration. Even during periods of freedom he completed zero court-ordered tasks.

He failed to make any long-term changes needed to offer appropriate care for H.H. The district court found clear and convincing evidence that Father appeared to lack effort in adjusting his circumstances to meet H.H.'s needs, as required by K.S.A. 38-2269(b)(8). The record supports this finding.

*Failure to maintain regular visitation—K.S.A. 38-2269(c)(2)*

Father's visitation record shows a pattern of disengagement from H.H. throughout the case. The district court found that Father attended only 17 of 33 scheduled visits— less than half—during the pendency of the proceedings. His last visit with H.H. took place about nine months before the termination hearing.

The record shows Father's repeated failures to prioritize his relationship with H.H. For the time he was out of custody, he was a no-show on two occasions and hospitalized during two others.

Even when Father attended visits, his behavior caused concern. Kern testified that Father would become so angry that she felt unsafe talking to him alone; therefore, she requested that security be present. A family support worker ended one visit when Father became agitated and asked inappropriate questions about the case in front of H.H. Father showed inconsistency, even when appearing, sometimes arriving late to scheduled visits. Throughout their interactions, Father claimed he did not understand why H.H. was in state custody despite Kern's repeated explanations.

Father offered only excuses for his failures. When asked about his lack of progress on case plan tasks, Father said he was grieving his mother and grandmother. He did not explain the missed visits. By the time of the termination hearing, Father's detention at Butler County on federal criminal charges had completely ended all visitation.

This complete lack of contact resulted from Father's criminal choices. We have no trouble concluding that there was clear and convincing evidence to support the court's finding of Father's failure to maintain visitation under K.S.A. 38-2269(c)(2).

*Failure to carry out a reasonable plan—K.S.A. 38-2269(c)(3)*

Father did not follow through with the court-approved reintegration plan. Between October 2022 and November 2023, during his time out of custody, Father completed no reintegration tasks.

The court-ordered reintegration plan required Father to complete standard tasks aimed at addressing the issues that led to H.H. coming into care: clinical assessment, substance abuse evaluation, parenting classes, domestic violence course, and drug testing. SFM provided Father with this case plan, court orders, and a resource guide in December 2022. Despite creating two achievement plans to support Father's progress, SFM's efforts were unsuccessful—Father did not initiate any actions.

Kern testified that even if Father were released immediately, he would still be unfit due to two years of complete noncompliance. The case had been ongoing for two years without Father making any secondary changes—the behavioral modifications necessary for reunification. Father's ongoing federal incarceration on fentanyl distribution charges, with no known release date, makes it impossible for him to care for H.H. now and in the future.

Based on Father's complete failure to engage with the reintegration plan, Kern concluded that termination was in H.H.'s best interests to achieve permanency through adoption. She testified that Father's pattern of intermittent incarceration and failure to complete any orders while free showed unfitness unlikely to change in the foreseeable future. The district court agreed, stating that Father "failed to take advantage of the services available to make meaningful and lasting lifestyle changes and has failed to carry out a reasonable plan directed toward the integration of his child into his parental home."

After evaluating the testimony, arguments of the parties, and evidence presented, the district court found clear and convincing evidence that Father failed to implement the reasonable plan aimed at integrating H.H. into a parental home, as required by K.S.A. 38-2269(c)(3).

*The court did not abuse its discretion in finding Father to be unfit.*

After reviewing the evidence in the light most favorable to the State, a rational fact-finder could have found it highly likely that Father was unfit under multiple statutory factors. Father's substance abuse, complete lack of engagement with services, abandonment of visitation, and ongoing federal incarceration established both current and future unfitness. Thus, clear and convincing evidence supported the district court's determination of unfitness.

3.  *There was sufficient evidence to find that Father's unfitness was unlikely to change in the foreseeable future.*

If the court finds clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child, the court next must determine whether the conduct or condition rendering the parent unable to care properly for the child is unlikely to change in the foreseeable future. K.S.A. 38-

14

2269(a). Courts examine the "foreseeable future" from the child's perspective because children and adults have different perceptions of time; a month or a year can seem considerably longer for a child than for an adult. Children have a right to permanency within a timeframe reasonable to them. See K.S.A. 38-2201(b)(4) (expressing policy that provisions of the code be construed with awareness that "time perception of a child differs from that of an adult and to dispose of all proceedings . . . without unnecessary delay"). Further, "'[a] district court may look to a parent's past conduct as an indicator of future behavior' and give weight to actions over intentions. [Citations omitted.]" *In re D.G.*, 319 Kan. 446, 459, 555 P.3d 719 (2024).

The court based its finding of foreseeability on the same factors it used to determine unfitness. It concluded that given the case's extended duration, H.H.'s young age, Father's complete lack of progress, his inability to adjust his circumstances, and his continued incarceration preventing visitation and reintegration, the district court concluded that Father's unfitness was unlikely to change in the foreseeable future. Clear and convincing evidence supported the district court's finding.

4.   *There was sufficient evidence to find that terminating Father's parental rights was in H.H.'s best interests.*

When a finding of unfitness of the parent is made, "the court shall consider whether termination of parental rights . . . is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the district court shall prioritize the child's physical, mental, and emotional needs. K.S.A. 38-2269(g)(1).

While the district court's finding of unfitness must be supported by clear and convincing evidence, the best interests determination is made based on a preponderance of the evidence. "This is because the analysis of a parent's unfitness determines the constitutional question of whether a parent's rights *can* be terminated, and the analysis of

15

the child's best interests determines whether a parent's rights *should* be terminated." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021).

The appellate court reviews the best interests determination for abuse of discretion, as the district court is better positioned to assess the complexities of the situation. The district court abuses its discretion if no reasonable person would agree with the court's decision or if the court makes a factual or legal mistake. *In re E.L.*, 61 Kan. App. 2d at 330.

Father argues that the district court abused its discretion by finding that terminating his parental rights was in H.H.'s best interests. He contends the evidence was insufficient to support such a finding. The district court disagreed.

H.H. spent over two years in limbo without progress from Father despite several opportunities. The district court correctly applied the "child time" principle, recognizing that H.H.'s two-year wait for permanency required a resolution. H.H.'s young age increased the need for stability, and he was thriving in a kinship placement which was determined to be an adoptive resource. The district court highlighted this, noting H.H.'s right to permanent placement. Father's continued federal detention made reintegration "all but impossible." The court found, by a preponderance of evidence and even clear and convincing evidence, that termination was in H.H.'s best interests. The record supports this decision. No factual or legal errors are evident, and reasonable people would agree with the district court's decision.

Thus, in sum, the district court did not abuse its discretion in deciding that terminating Father's parental rights was in H.H.'s best interests.

Affirmed.