NOT DESIGNATED FOR PUBLICATION

No. 128,321

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.R.S.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Montgomery District Court; REBECCA STEWART, magistrate judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, for appellant natural father.

*Melissa G. Johnson*, county attorney, for appellee.

Before ISHERWOOD, P.J., CLINE, J., and COURTNEY D. CRAVER, District Judge, assigned.

PER CURIAM: Father appeals from the district court's order terminating his parental rights to his minor child, M.R.S., born in 2018. He contends the district court erred by applying a presumption of unfitness and by concluding he failed to rebut that presumption. He also challenges the court's alternative findings of unfitness as unsupported by clear and convincing evidence. Finally, Father argues the court abused its discretion in determining that termination of his parental rights was in M.R.S.'s best interests. After carefully reviewing the record and the issues presented, we affirm in part, reverse in part, and remand with directions for the district court to make findings regarding whether termination of Father's parental rights is in the best interests of M.R.S.

1

On May 28, 2020, the State filed a child in need of care (CINC) petition seeking the immediate removal of M.R.S. from Father's custody, alleging neglect and physical abuse. At that time, Father had physical custody of M.R.S., and Oklahoma authorities were investigating Mother, who is not a party to this appeal.

The allegations stemmed from a welfare check conducted by a Department for Children and Families (DCF) employee at Father's residence, which he shared with his girlfriend and her two children. Although the check concerned the girlfriend's children, the DCF employee observed that M.R.S. appeared severely malnourished and had visible bruising on her face. Father was not home. His girlfriend reported that Father caused the bruises by grabbing M.R.S.'s face and said she had videos showing Father force-feeding M.R.S.

Shortly after, the district court placed M.R.S. in DCF custody and assigned TFI Family Services (TFI) to manage the case. On June 29, 2020, the district court adjudicated M.R.S. a child in need of care based on stipulations from both parents. The court approved and adopted the proposed permanency plan and ordered both parents to submit to drug and alcohol testing before visitation could occur.

On January 12, 2024, the State moved to terminate both parents' parental rights. The motion alleged Father was unfit under K.S.A. 38-2269(b)(8) for "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child"; under K.S.A. 38-2269(c)(2) for "failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"; and under K.S.A. 38-2269(c)(3) for "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." The State also sought to apply the presumption of unfitness under K.S.A. 38-2271(a)(6) because M.R.S. had

been in out-of-home placement for more than two years, Father had failed to carry out a reasonable plan directed toward reintegration, and there was a substantial probability he would not do so in the near future.

The district court held the termination hearing on January 29, 2024. The State presented two witnesses from TFI: Carol Conley and Jenna Spencer.

*Testimony of Carol Conley*

Conley served as the case manager from May 2020 until October 2021, later becoming a supervisor. She testified that at the time M.R.S. was removed, "[i]t was very strictly known if you didn't pass a UA, then you didn't get a visit." She stated that Father "refused UA's all the time" and that documentation of his failures "have been submitted to the Court during court hearings."

Conley testified that Father's case plan required him to keep TFI informed about criminal charges arising from the same events that led to M.R.S.'s removal. She explained that she had minimal communication with Father, recalling that he cited transportation issues and incarceration as reasons for missing visits during the first year. However, the parties later stipulated Father was jailed only nine days, from May 26 to June 4, 2020. On cross-examination, Conley acknowledged she had not verified Father's custodial status and was unaware that a no-contact order had prevented visits during that period. She attributed this oversight to starting with TFI "when we were on lockdown for Covid [and] we weren't working in the office," adding that no supervisor had directed her to verify Father's criminal case status.

Conley testified that Father's case plan required him to complete parenting classes; provide proof of income, employment, and residence; prepare a household budget; and sign releases for mental-health or social-service records. While Father completed some

tasks—such as a parenting evaluation—he failed to provide employment verification or housing documentation. Conley stated he submitted unsigned and undated certificates for parenting classes, and when the therapist contacted her for case-plan information, Conley could not respond because Father never signed a release.

*Testimony of Jenna Spencer*

Spencer served as permanency support worker during the year preceding the termination hearing and supervised Father's visits. She testified that Father missed three visits for failing to confirm attendance by 5 p.m. the evening before. During visits, Spencer observed that Father struggled to direct and redirect M.R.S., explaining that he would engage in conversations with her while M.R.S. would run into the hallway. At TFI's request, Father's girlfriend no longer attended visits so staff could observe his interactions with M.R.S. without her direction. Spencer said visits occurred twice a month for two hours until January 2024, when TFI reduced them to one hour monthly under its adoption-goal policy.

Spencer testified that Father lived in a home owned by his girlfriend's father and provided rent and utility receipts. Oklahoma's child-welfare agency inspected the home and advised that it was "not unsafe." Father gave TFI two paystubs from Taco Bell dated December 2023 and one undated, handwritten paystub from a prior job at Sinclair. Spencer could not verify consistent employment because Father failed to keep TFI informed of job changes. She scheduled a meeting to assist him with applying for SSI benefits, but Father did not attend.

Spencer further testified that Father completed a parenting evaluation but declined to attend additional classes when requested. He failed to provide mental-health records or signed releases allowing TFI access. According to Spencer, the only case-plan task Father completed in the past year was attending visits.

On cross-examination by the guardian ad litem, Spencer stated Father had not submitted any urinalyses in the four-year history of the case but, to her knowledge, none were requested during her tenure. Father's attorney questioned her about an August 2022 court report stating that "all the [UAs] he has submitted have been negative and TFI will be requesting that these drop from him." Spencer said she was unaware of that report but knew Father was no longer required to test by the time she became involved.

*Father's Evidence*

Father recalled Conley to testify about court reports and UA requirements. Conley testified she did not know when TFI discontinued UA testing but believed it occurred in January 2023. She confirmed that drug use was never identified as a concern but that the judge initially ordered UAs as part of the CINC case.

Father testified that he spent nine days in jail at the start of the case and was subject to a no-contact order as a bond condition. He later pleaded guilty to misdemeanor child endangerment and received twelve months' probation. Father said he believed TFI staff told him he could not see M.R.S. during probation. Although his criminal case resolved in June 2021, he did not visit M.R.S. until December 2021, and then not again until September 2022, explaining that he had been "moving to Pryor."

Father stated that beginning in March 2023, he had monthly visits lasting one hour, later increased to two visits per month for two hours each, before being reduced again to one-hour visits. He said TFI never explained the reduction.

Father testified that he worked full-time at Taco Bell and had previously worked at a Sinclair gas station. The district court admitted his paystubs into evidence without objection, though the exhibit is not included in the appellate record. On cross-examination, Father acknowledged holding nine jobs over the course of the CINC case.

Father lived with his girlfriend in a home owned by her father, paying $300 to $400 monthly for rent and utilities without a written lease. He anticipated moving into a new home with his girlfriend in February 2024.

Father stated he completed parenting classes in Oklahoma and provided certificates admitted into evidence without objection. He said TFI staff told him to "start redirecting [M.R.S.]," but he did not know what that meant. On cross-examination, he said he did not believe additional classes were necessary because he had already completed them.

Father denied using drugs or having a substance-abuse problem, testifying that he had never tested positive for drugs and that random testing was a condition of his probation. He said he stopped submitting UAs in the CINC case after TFI told him they were no longer required.

Father testified that he could complete any remaining case-plan tasks if given more time, although he believed the only outstanding task was "parenting assistance." Later, he said he had completed all tasks "up until a year ago when [TFI] started scheduling more." He acknowledged having a sensory integration disorder that slowed his processing of questions but denied it affected his parenting.

*District Court's Ruling*

After hearing arguments, the district court terminated Father's parental rights. The court explained:

> "[T]he question comes down to the amount of effort, on the part of the parent, to complete the case plan goals and to change their circumstance in a way that will enable them to care for the child properly, and I just don't think that dad has

6

rebutted his presumption. The State has met its burden. Has demonstrated that dad has not done it at this point and there's not a high likelihood that he will do it in the future."

"I'm going to terminate dad's rights as of today's date as well. I just don't, I just don't see enough happening here."

In its written journal entry filed about two weeks later, the district court found by clear and convincing evidence that Father was unfit under K.S.A. 38-2269(b)(8), (b)(9), (c)(2), and (c)(3), and that his unfitness was unlikely to change in the foreseeable future. The order indicated that "[c]onsidering the physical, mental or emotional health of the child, termination of parental rights is in the best interests of the child named above and the physical, mental or emotional needs of the child would best be served by termination of parental rights."

Father filed a premature notice of appeal, which became effective upon the filing of the written termination order.

ANALYSIS

Father challenges the termination of his parental rights on three grounds. He argues that (1) he successfully rebutted the statutory presumption of unfitness alleged by the State; (2) the evidence did not clearly and convincingly establish that he was unfit or that his unfitness would persist in the foreseeable future; and (3) the district court failed to consider whether termination was in his child's best interests, instead merely checking a box on the journal entry. He asks this court to reverse the termination ruling and direct that the case be transferred to Oklahoma for reintegration proceedings.

The State responds that the district court correctly applied the law, properly found Father unfit under the cited statutory factors, and that its findings are supported by the

7

record. The State maintains the court's notation on the journal entry suffices for a best-interests finding, or alternatively that the record supports that conclusion. Finally, it asserts this court lacks authority to order the case transferred to Oklahoma.

UNFITNESS TO PARENT AND LIKELIHOOD OF CHANGE

*Standard of Review*

Under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., a district court may terminate parental rights after adjudicating a child in need of care if it finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition rendering the parent unable to care properly for the child, and that the condition is unlikely to change in the foreseeable future. K.S.A. 38-2269(a).

The statute identifies several nonexclusive factors for assessing unfitness. K.S.A. 38-2269(b), (c). Any one factor alone may—but need not—support termination. K.S.A. 38-2269(f).

A parent may also be presumed unfit under K.S.A. 38-2271(a) if the State proves one of the listed circumstances by clear and convincing evidence. The burden then shifts to the parent to rebut that presumption by a preponderance of the evidence. K.S.A. 38-2271(b).

On appeal, we view all evidence in the light most favorable to the prevailing party. We do not reweigh evidence, assess witness credibility, or resolve factual disputes. A termination decision will be upheld if the district court's findings are highly probable, meaning supported by clear and convincing evidence. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

8

*Application of Presumption of Unfitness*

Father's challenge under K.S.A. 38-2271(a)(6) is misplaced. As he concedes, the district court's written order did not invoke that factor. In civil proceedings, the signed order controls over any inconsistent oral statement from the bench. *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75, 87, 221 P.3d 1157 (2010). This principle applies equally in termination proceedings. *In re K.S.*, No. 126,612, 2024 WL 137351, at *3 (Kan. App. 2024) (unpublished opinion).

Accordingly, we review only those statutory factors cited in the journal entry: K.S.A. 38-2269(b)(8), (b)(9), (c)(2), and (c)(3). We consider whether the district court's findings under those provisions are supported by clear and convincing evidence and whether Father's unfitness was unlikely to change in the foreseeable future.

*Statutory Factors Supporting Unfitness*

Under K.S.A. 38-2269(b)(8), a court may find a parent unfit when the evidence shows a "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." Father contends that this factor does not apply to him because he "adjusted his circumstances greatly," pointing to his completion of probation, consistent employment, and stable housing approved by TFI in Oklahoma. He also attributes his failure to provide mental health records to not being told to sign a release and his incomplete parenting classes to learning difficulties and unclear direction from TFI staff.

The record, however, supports the district court's finding that Father did not make adequate efforts to address the issues preventing reintegration. Although Father made progress on certain tasks, several remained incomplete at the time of the termination hearing. A TFI permanency support worker testified that Father's efforts during the prior

9

year were largely limited to attending visits and providing partial proof of employment. His housing situation also remained uncertain, as he planned to move shortly after the hearing—an action that would require a new inspection before reintegration could proceed. Considering the evidence in the light most favorable to the State, a rational factfinder could conclude that clear and convincing evidence supports a finding of unfitness under K.S.A. 38-2269(b)(8) because Father failed to make sufficient effort to adjust his circumstances to meet his child's needs.

Under K.S.A. 38-2269(b)(9), a court may find a parent unfit when, due to the parent's own actions or inactions and the presence of one or more contributing factors listed in subsection (c), the child has been in the custody of the Secretary for more than 15 of the most recent 22 months. The record here leaves no doubt that this statutory condition is met. M.R.S. entered DCF custody in May 2020 and remained there for over three and a half years by the time of the termination hearing. Father's recent increase in visitation—though commendable—does not alter that timeline or negate the length of time in state custody. Viewed in the light most favorable to the State, clear and convincing evidence supports the district court's finding of unfitness under K.S.A. 38-2269(b)(9).

Likewise, K.S.A. 38-2269(c)(2) directs the court to consider whether a parent has failed to maintain regular visitation, contact, or communication with the child or the child's custodian. Father emphasizes that he consistently attended visits for nine months before the termination hearing, but the broader record reveals long stretches of minimal or no contact. From May 2020 through March 2023, Father's visitation was sporadic. After the no-contact order was lifted in June 2021, he did not visit until December 2021, waited another nine months until September 2022, and again until December 2022. Even acknowledging the early restriction, this pattern shows extended periods without contact. A reasonable factfinder could conclude, by clear and convincing evidence, that Father

10

failed to maintain consistent contact with his child as contemplated by K.S.A. 38-2269(c)(2).

Finally, K.S.A. 38-2269(c)(3) allows a finding of unfitness when a parent fails to carry out a reasonable plan approved by the court that is directed toward reintegration of the child into the parental home. Father contends he satisfied most of his case plan tasks, relying on a September 2022 review order that described his efforts as "reasonable." Yet the documents he references were part of the CINC "social file" and were never admitted into evidence at the termination hearing. See *In re K.H.*, 56 Kan. App. 2d 1135, 1141, 444 P.3d 354 (2019). Because neither party asked the district court to admit or take judicial notice of those materials, the court properly did not rely on them. And Father cannot challenge their exclusion for the first time on appeal. K.S.A. 60-404. The evidence actually admitted at the hearing, particularly the testimony from two TFI caseworkers, showed that Father failed to complete several required tasks, including verified parenting classes and full employment documentation. Taken together, this evidence supports the district court's finding of unfitness under K.S.A. 38-2269(c)(3) for failure to carry out a reasonable reintegration plan.

The evidence presented at the termination hearing supports the district court's finding. TFI workers testified that Father failed to complete multiple case plan tasks. Although he submitted parenting-class certificates, they were unsigned and unverifiable. He provided proof of employment for only two of his several jobs during the case. Considering this record, a rational factfinder could agree with the district court's conclusion that Father failed to carry out a reasonable reintegration plan.

*Likelihood of Change in the Foreseeable Future*

After finding a parent unfit, the court must determine whether the unfitness is unlikely to change in the foreseeable future. K.S.A. 38-2269(a); *In re D.G.*, 319 Kan.

11

446, 459, 555 P.3d 719 (2024). Past conduct is a strong predictor of future behavior. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). This analysis is governed by the principle that time must be viewed from the child's perspective rather than the adult's. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008).

Father asserts that he complied with his case plan and maintained a relationship with M.R.S., suggesting the TFI witnesses understated his progress. The record, however, demonstrates that Father engaged inconsistently for much of the case, failed to provide adequate documentation, and remained limited to one-hour monthly visits at the time of the hearing. Viewing this evidence in the light most favorable to the State, a rational factfinder could find it highly probable that Father's unfitness would not change in the foreseeable future.

BEST-INTERESTS DETERMINATION

Once a court determines a parent is unfit and that the unfitness is unlikely to change, it must also determine whether termination of parental rights is in the child's best interests, giving primary consideration to the child's physical, mental, and emotional health. K.S.A. 38-2269(g)(1). This determination must be supported by a preponderance of the evidence. *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021). We review such a finding for abuse of discretion. *In re C.T.*, 61 Kan. App. 2d 218, 227, 501 P.3d 899 (2021).

Here, the district court did not make any oral findings on the record regarding M.R.S.'s best interests. The only indication is a checked box on the journal entry. While clear and convincing evidence supports the findings of unfitness, the record lacks any discussion of how termination serves the child's best interests as required by statute. Termination of parental rights is like a three-legged stool—each leg representing a

distinct statutory finding: unfitness, likelihood of change, and best interests. When one leg is missing, the stool cannot stand.

Once a court finds a parent unfit, K.S.A. 38-2269(g)(1) requires the court to take the next and essential step—considering whether termination of the parental rights, as requested in the petition or motion, is in the best interests of the child. The statute expressly mandates this determination before parental rights may be severed. In making it, the court must give primary consideration to the child's physical, mental, and emotional welfare. If the court cannot find that termination is in the child's best interests, it may not lawfully terminate the parent's rights. *In re L.A.*, No. 126,474, 2024 WL 4182501, at *14 (Kan. App. 2024) (unpublished opinion).

Without a best-interests finding, the statutory framework is incomplete. See *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

Clear and convincing evidence supports the district court's findings that Father was unfit and that his unfitness was unlikely to change in the foreseeable future. But the district court erred by failing to make the separate, statutorily required finding that termination of Father's parental rights was in M.R.S.'s best interests. Failure of the district court to make this statutorily required finding requires remand so the district court can make these additional findings. 45 Kan. App. 2d at 354.

We therefore affirm the district court's findings of unfitness and likelihood of continued unfitness, reverse the termination of parental rights, and remand for the district court to make the required best-interests determination consistent with K.S.A. 38-2269(g)(1).

Affirmed in part, reversed in part, and remanded with directions.